MARIETTE ALLEN, RESPONDENT, *v.* THE ATLANTIC & PACIFIC TELEGRAPH COMPANY, APPELLANT.

*Telegraph companies, duty of, as to erecting and maintaining suitable poles—liability of, to one passing upon the highway, who is injured by the fall thereof.*

Where a telegraph company has placed its poles at a sufficient distance from the traveled portion of a highway to be safe from collision with vehicles passing along it under ordinary circumstances, it is not liable for the damages resulting from an accident arising from the breaking and fall of one of the poles, where the proximate cause of the breaking and fall thereof was a collision with a runaway team of horses and the wagon to which they were attached.

If the collision was the proximate cause of the breaking of the pole, the defendant cannot be held liable on account of an original deficiency in the strength of the pole to withstand such a collision.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*C. E. Souther*, for the appellant.

*Horatio P. Allen*, for the respondent.

TALCOTT, P. J.:

The action was brought to recover damages for the alleged negligence of the defendant in erecting and maintaining, at a point two or three miles south of the village of Fulton, in Oswego county, a telegraph pole insufficient to sustain the wires of its telegraph, by reason of which insufficiency the plaintiff claims that the

pole fell down and the wires were thrown across the highway in such a manner that they caught upon the top of a conveyance in which the plaintiff was riding along the highway, and overturned and broke the carriage, and caused the horse attached thereto to run away, whereby the plaintiff was thrown out and severely injured. The main features of the transaction resulting in the accident were not a matter of controversy before the jury, but it was claimed on the part of the defendant that the breaking of the telegraph pole was not through any insufficiency in the strength of the pole, but was occasioned by a collision with a wagon drawn by a runaway team of horses belonging to a Mr. Chubb, who lived in the neighborhood of the place where the accident occurred, a short time before its occurrence. No person witnessed any collision between the telegraph pole and the runaway team, but there was circumstantial evidence tending to show that such a collision had occurred, and evidence showing that the pole had fallen about the time when the runaway horses dragging the wagon had passed the pole.

Chubb, the owner of the runaway team, went in pursuit of the escaped team, and, so far as appears, was the first to discover that the pole had fallen.

The law regarding the liability of a telegraph company for an injury occasioned by the fact of one of its poles falling is thus laid down in the case of *Ward* v. *The A. & P. Telegraph Company* (71 N. Y., 81).

" The company is bound to use reasonable care in the construction and maintenance of its line. And if it appears that the post was originally not reasonably sufficient, or that it was carelessly permitted to become insufficient by decay, then responsibility attaches ; but the company is not absolutely bound to have its posts in the streets so strong, that they cannot be broken or thrown down by any storm, nor is it bound to insure the safety of passengers in the streets from injuries resulting from the falling thereof."

And in that case the refusal of the court to charge that the defendant was not bound so to make or manage its line as to guard against storms of unusual severity, the occurrence of which could not be reasonably expected, was held error.

On this subject, in reference to the claim by the defendant that the pole in question had been broken down by a violent collision with Chubb's runaway team, the trial judge had charged as follows: "Again, gentlemen, there is another important question of law in this case, and one which is, to some extent, an intricate one, and that is the question that arises in relation to the accident that happened, where two parties may have contributed to the accident; this question before you may be an important question, as it relates to the injury. If this pole in question was not a proper one for the place where it stood; if it was not a pole which should have been placed and continued at the point where it stood, then, though it might have been there one or more years, and no accident happened, yet, if, at the time of the accident, it had become unfit and unsafe and improper for the purpose it was designed, the company would be liable, although the team of Chubb may have run against the post and contributed to the injury. The rule of law laid down in 56 N. Y., 200, is, "that where an injury to one is caused by, and is the natural and probable result of the wrongful act or omission of another, such other is liable therefor, although other causes put in motion by the act or omission, and which in the absence thereof would not have produced the result, contribute to the injury. These are really the important questions of law in the case."

Defendant's counsel requested the court to charge " that the defendant was not bound to erect or maintain telegraph poles strong enough to resist any extraneous force, or any collision, or any other force than that of maintaining the wires in their position as affected by storms," and the court so charged, saying, "I think I will charge the proposition that you propose. I so charge—that covers the whole ground."

The defendant's counsel then requested the court to charge " that if the jury shall find that the pole would not have been broken had it not been for the collision with Chubbs' team and wagon, then the plaintiff cannot recover." To which the court replied, " I refuse to charge that," and the defendant excepted to such refusal.

Now, although the last proposition requested by the defendant was covered by the charge made by the judge in answer to the other

special request of the counsel, yet the counsel, apparently fearing that the jury could not or would not apply the general proposition charged, to the particular facts of the case, desired to have the trial judge instruct the jury as to the particular application of the principle which had been charged by the judge before, in answer to the special request, and the judge, instead of giving the jury any additional light on the subject, or stating, or in any manner referring to the charge already given as embracing his views on the subject, peremptorily refused to charge as requested.

The defendant's counsel then further requested the court to charge " that if the jury shall find that the pole was broken by the collision with the team and wagon of Chubb, then the plaintiff cannot recover," to which the court replied, " I charge that, unless the pole was an improper or unsafe pole."

We think, taking the whole charge together, that it was calculated to leave with the jury the impression that, although the cause of the breaking of the pole was the collision with Chubbs' runaway team, yet that the jury could find a verdict for the plaintiff on account of their speculations as to the original deficiency in the strength of the telegraph pole to resist such a collision.

As we understand the principles laid down in the case of *Ward v. A. & P. Telegraph Company, supra,* this is an erroneous view of the law in such a case. The pole was placed at a sufficient distance from the traveled portion of the highway to be safe from collision with vehicles passing along it under any ordinary circumstances, and the defendant was not bound so to make or manage its line as to guard against severe collisions, the occurrence of which could not have been reasonably expected.

If therefore the proximate cause of the breaking of the pole, whereby the accident to the plaintiff was occasioned, was the collision with Chubbs' team, we do not think the defendant was liable for the consequences of the accident.

There are none of the other exceptions which call for any especial remark, though some of the testimony given by witnesses as expert testimony concerning the pieces of the broken pole produced in court could hardly be considered admissible in that view.

The judgment should be reversed and new trial ordered, costs to abide the event.

Present—TALCOTT, P. J., SMITH and HARDIN, JJ.

Judgment reversed and new trial ordered, costs to abide the event.